# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1494 | **DATE** | 5/21/03 |
| **CASE TITLE** | F. JOHN STARK, III v. PPM AMERICA, INC., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Petition for Attorney's Fees and Non-Taxable Costs (Doc. # 102)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' Petition for Attorney's Fees and Non-Taxable Costs (Doc. # 102) is **GRANTED** in part and **DENIED** in part. Attorney's fees are awarded in the amount of **$261,529.00** and $0 in non-taxable costs. Enter memorandum opinion and order.

(11) ☐ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 2 3 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 115 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 03 MAY 22 PM 5: 27 | MAY 2 3 2003 date mailed notice | |
| JHC courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| F. JOHN STARK, III, | ) | DOCKETED |
| | ) | MAY 2 3 2003 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PPM AMERICA, INC., | ) | No. 01 C 1494 |
| PPM HOLDINGS, INC., and | ) | |
| the AMENDED AND RESTATED | ) | The Honorable William J. Hibbler |
| PPM HOLDINGS, INC. CHANGE OF | ) | |
| CONTROL SEVERANCE PLAN, | ) | |
| PLAN NO. 503, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On September 23, 2002, this Court entered summary judgment in favor of defendants on, *inter alia*, plaintiff's claim for benefits under a Change of Control Severance Plan governed by ERISA (Plan). On January 24, 2003, the Court awarded defendants attorney's fee and non-taxable costs pursuant ERISA's discretionary fee-shifting provision, 29 U.S.C. § 1132(g)(1) (Jan. 24th Order). Now before the Court is defendants' petition for attorney's fees and non-taxable costs and plaintiff's objections. For the following reasons, defendants are awarded $261,529.00 in attorney's fees and $0 in non-taxable costs.

## I. BACKGROUND

Defendants were represented in this action by two law firms – Morgan, Lewis & Bockius LLP (Morgan Lewis) and Winston & Strawn. The Philadelphia-based Morgan Lewis assumed the primary defense and the Chicago-based Winston & Strawn acted as local counsel.

1



Defendants' petition includes over 80 pages of dated billing entries totaling $415,508 in legal fees from Morgan Lewis and $77,962.50 from Winston & Strawn. Defendants also request $71,168.59 in non-taxable costs.

Defendants attach the affidavits of Michael Banks of Morgan Lewis and Rex Sessions of Winston & Strawn in support of their petition. Mr. Banks's affidavit alleges that he acted as lead counsel and charged hourly rates of $395, $425, $450. The affidavit also states that Morgan Lewis staffed the case with associates, paralegals, and occasionally consulted a corporate partner. Mr. Sessions's affidavit alleges that he billed defendants at hourly rates ranging from $400 to $435. The affidavit also states that Winston & Strawn utilized an associate with hourly rates ranging from $185 to $220.

Plaintiff raises a number of objections to defendants' submissions. Plaintiff first argues that defendants' award must be limited to the fees accrued between the time plaintiff commenced the action and the date plaintiff identified a Change in Control event under the Plan. Plaintiff also claims that the total amount of fees requested is excessive, unreasonable, and the result of duplicative efforts by defendants' attorneys. Plaintiff further argues that defendants' petition does not discriminate between successful and unsuccessful claims and defendants can only recover fees relating to those claims upon which they prevailed.

Defendants respond that plaintiff's temporal limitation on their fee recovery is arbitrary, inaccurate, and contrary to the Jan. 24th Order. Defendants also claim that the requested fees and costs are reasonable and are less than what plaintiff paid his own attorneys. Defendants further dispute that plaintiff prevailed on any claims that would necessitate parsing the fee award.

## II. DISCUSSION

### A. Attorney's Fees

A determination of attorney's fees requires calculation of the "lodestar." *Mathur v. Board of Trustees of Southern Illinois University*, 317 F.3d 738, 742 (7th Cir. 2003). The lodestar is the product of an attorney's reasonable hourly rate and the number of hours reasonably expended. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The Court must exclude from this calculation hours that were not "reasonably expended" on the litigation. *Id.* Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. *Id.* Further, the Court can reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed and that were distinct in all respects from claims on which the party did succeed. *Id.* at 434-435; *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). After determining the number of hours reasonably expended, the Court must examine whether the requested hourly rate is reasonable. *Hensley*, 461 U.S. at 433. The Court then multiplies that rate by the reasonable hours expended to obtain the lodestar. The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed. *Id.*

#### 1. Lodestar

Before calculating the lodestar, the Court must address plaintiff's contention that any award be limited to the period of time plaintiff originally commenced this action (March 2, 2001) and the date plaintiff first identified the alleged Change of Control event under the Plan (May 15, 2001). Plaintiff contends that the Court's decision to award fees was based on his original complaint's failure to identify the actual transaction that effected a Change of Control and that

3

he remedied this offense as early as May 15, 2001 when he apprized defendants' general counsel, Laurie Seegers, of the relevant Change of Control event under which he was proceeding. Plaintiff therefore believes that defendants should not recoup fees for work performed after he revealed the necessary facts to substantiate his claims.

Plaintiff's argument is unconvincing and contrary to the Court's Jan. 24th Order. The Court found that plaintiff's entire lawsuit was brought in bad faith and that the harm wrought by plaintiff's baseless complaint continued well into the litigation. *See* Jan. 24th Order at 4-5. The Court's fee award was based on the fact that plaintiff's ultimate legal position – not just his initial offending pleadings – was not substantially justified. Accordingly, defendants are entitled to fees incurred throughout the litigation.

### a. Number of Hours

Plaintiff argues that even a "cursory" review of defendants' submissions reveal "numerous questionable entries and expenditures." Plaintiff then offers a number of general objections that purport to "raise serious concerns about the validity of Defendants' Petition." Plaintiff takes issue with entries relating to: 1) time spent drafting status reports and estimates of attorneys' fees and costs; 2) time spent addressing insurance coverage issues for the client; 3) time spent negotiating with outside vendors; 4) time spent on compensation questions; 5) costs associated with travel time to Chicago; 6) time spent by Winston and Strawn in excess of their role as local counsel; and 7) time spent after the Court's September 2001 decision. Plaintiff does not direct the Court to any objectionable time entries or dates. Plaintiff also fails to substantiate his objections with citations to any relevant authority. Defendants' response to plaintiff's objections is similarly inadequate and for the most part fails to specifically respond to plaintiff's challenges. Despite

4

these shortcomings, the Court will address each of plaintiff's objections.

1. Plaintiff's Objections

Plaintiff offers no explanations, citations to relevant authority, or reference to specific time entries to support his first three challenges. For instance, plaintiff does not explain why the Court should disregard defendants' attorneys' time spent negotiating with outside vendors. Nor does plaintiff provide any support for his contention that the Court should exclude time spent drafting estimates of attorney's fees and costs. Moreover, it is not at all clear why defendants' efforts devoted to these particular tasks represent hours not reasonably expended. As plaintiff has not brought to the Court's attention any evidence to challenge the reasonableness of the specified work categories, the Court rejects plaintiff's first three objections.

Plaintiff's fourth objection is that defendants did not properly discount their time to reflect work performed defending against plaintiff's non-ERISA claims.[1] Defendants respond that plaintiff commingled his non-ERISA and ERISA claims so that it became impossible to distinguish between the two when compiling their fee petition. The Court agrees that defendants cannot recoup fees for attorney time spent responding to plaintiff's non-ERISA claims. It is not realistic, however, to expect defendants to be able to articulate their time entries in such a compartmentalized fashion. The defense of a case occurs much more holistically as separate claims arising from a common core of facts intermingle quite easily. The Court will nonetheless discount defendants' hours by 20% or 354 hours to reflect time spent defending against non-ERISA claims. This reduction is based on the Court's best estimation of the relative

---

[1] In addition to his ERISA claims, plaintiff brought a breach of contract claim based on defendants' failure to pay him a bonus.

5

importance that plaintiff's non-ERISA claims were to the overall litigation.

Plaintiff's fifth objection regards costs associated with defendants' selection of an out-of-town law firm, including travel time to and from Chicago. In response, defendants offer evidence that Morgan Lewis has a national labor and employment law and benefits practice and frequently represents clients in locations in which it does not have an office. Under these circumstances, it was not unreasonable for defendants to engage an out-of-town law firm for assistance with an Illinois suit. *Berthold Types Ltd. v. Adobe Systems, Inc.*, 186 F.Supp. 2d 834, 839 (N.D. Ill. 2003). It is also well established that attorney travel time and expenses are compensable. *Maurice v. Kozel*, 69 F.3d 830 (7th Cir. 1995). Therefore, plaintiff's fifth objection is without merit.

Plaintiff's sixth objection is that Winston & Strawn's participation should have been limited to ministerial duties and that any time spent beyond those duties was a result of unnecessary and redundant efforts. Plaintiff offers no evidence to support his challenge and ignores Mr. Sessions's affidavit which explains Winston & Strawn's substantial contributions. Plaintiff's mere allegations of redundancy are insufficient to overcome defendants' evidence of reasonableness. *See Olander v. Bucyrus-Erie Co.*, 187 F.3d 599, 608 (7th Cir. 1999)("Normally one bald assertion is as good as another – but not when one party carries the burden of persuasion that the other party's determination was unreasonable."). Moreover, it is often reasonable to staff a relatively complex case with multiple lawyers. *See Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 526 (7th Cir. 1995).

Plaintiff's final challenge regards time spent by defendants after the Court's September 2001 Order granting defendants summary judgment. Plaintiff asks the Court to exclude fees incurred responding to plaintiff's motion to amend the Court's judgment, appealing to the

6

Seventh Circuit, and discussing settlement. Plaintiff does not explain why ERISA's discretionary fee-shifting provision does not apply in the post-judgment and appellate process and the Court has not found any authority holding that the provision does not apply in this context. In fact, the Seventh Circuit has held ERISA's *non-discretionary* fee shifting provision, § 1132(g)(2), includes attorney's fees incurred in the post-judgment and appellate process. *Plumbers' Pension F. v. Domas Mech. Contractors*, 778 F.2d 1266 (7th Cir. 1985). The Court also notes that plaintiff voluntarily decided to bring its post-judgement motion to amend for no other reason than what appears to be an effort to posture itself for appeal. Thus, as defendants' post-judgment activities appear reasonable and mainly in response to plaintiff's motions, plaintiff's final objection is refused.

### 2. Level of Success

Plaintiff also argues that the Court must substantially reduce defendants' recovery to reflect the defendants' level of success. Plaintiff claims that defendants did not prevail on their exhaustion of remedies defense and therefore cannot recover fees for attorney time related to that claim. Without hazarding a estimate, plaintiff contends that the parties spent an "inordinate" amount of time litigating the exhaustion issue so that any substantive success enjoyed by defendants was offset by plaintiff's procedural victory. In response, defendants categorically deny that plaintiff prevailed on the exhaustion issue and that this Court's orders clearly indicate as much. Moreover, defendants claim that the exhaustion issue was not a separate claim that should be scrutinized distinctly, but rather one of many arguments supporting their ultimately successful position.

The Supreme Court has counseled district courts to reduce the fee award to account for the limited success of the prevailing party. *Texas State Teachers Assoc. v. Garland Independent*

7

*School Dist.*, 489 U.S. 782, 789-90 (1989). But where the "claims of relief . . . involve a common core of facts or [are] based on related legal theories" so that "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, . . . the district court should focus on the significance of the overall relief obtained by the [prevailing party] in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.

Under these instructions, it is clear that the Court should not reduce defendants' award to reflect work devoted to the exhaustion of remedies defense. First and foremost, plaintiff did not "prevail" on the issue. During the litigation, the Court issued two rulings regarding plaintiff's failure to exhaust his administrative remedies – a denial of defendants' motion to dismiss and denial of plaintiff's cross motion for summary judgment.[2] Neither decision suggests plaintiff's success on the exhaustion issue. Regarding defendants' motion to dismiss, the Court did not deny the motion because plaintiff's position had merit, rather it was "to allow Plaintiff an opportunity to develop his defense." *See* Jan. 24 Order at 3. Nothing in the Court's decision indicated that defendants could not ultimately use the exhaustion defense to defeat plaintiff's claims. Regarding plaintiff's cross motion for summary judgment, the Court flatly rejected plaintiff's claim which argued that further administrative review would have been futile. This unequivocal decision certainly does not bode victory for plaintiff on exhaustion claim. The reality is that the Court never decided the exhaustion of remedies issue because it was not

---

[2]Defendants brought a motion to dismiss plaintiff's complaint for failure to exhaust his administrative remedies. After the Court denied defendants' motion, the parties cross moved for summary judgment. One of plaintiff's arguments was that his failure to exhaust must be excused due to futility.

8

necessary to the ultimate resolution of the case. Rather, the Court based its ruling for defendants on plaintiff's total inability to articulate a Change in Control event under the Plan. The Court's rejection of or failure to reach the exhaustion defense is not a sufficient reason for reducing a fee. *Hensley*, 461 U.S. at 435. Additionally, the Court's statements in the Jan. 24th Order unambiguously reveal the Court's conclusions regarding plaintiff's failure to exhaust his administrative remedies. The Court found that plaintiff "made no real attempt to exhaust the internal remedies set forth in the plan," and that plaintiff "blatantly ignored" the requirement to submit a written application for benefits before filing suit. Jan. 24th Order at 3. Accordingly, plaintiff's claim that he prevailed on the exhaustion issue is wholly untenable and even somewhat remarkable. As plaintiff has not pointed the Court towards any other ground upon which defendants did not prevail, the Court has no reason to reduce defendants' award to reflect a less than complete level of success in this litigation.

                3.      Other Reductions

Although plaintiff has not raised any further objections to defendants' submissions, the Court must nevertheless conduct its own review of the petition with a view towards eliminating those hours that are "excessive, duplicative or unnecessary." *Hensley*, 461 U.S. at 434. The most troubling aspect of Morgan Lewis's submissions is the description of the work performed by Morgan Lewis's highest-priced attorney, Mr. Banks. The vast majority of Mr. Banks's time entries vaguely describe telephone conferences, internal meetings, and preparation of various e-mails and reports. Very few entries describe substantive legal work specifically directed towards advancing defendants' position in the litigation. Mr. Banks's contributions are not at all evident from the descriptions provided in defendants' petition and the Court cannot

justify awarding almost three quarters of a million dollars in legal fees without assurance that his fees were deservedly earned. This same goes for Mr. Sessions of Winston & Strawn. Many of Mr. Sessions's entries are so poorly described that the Court must disregard them altogether. Some particularly bad examples include:

    3/5/2001:     Conference with Morgan Lewis lawyers
    3/23/2001:   Correspondence to L. Seegers
    8/8/2001:     Multiple Conferences re various issue

These vague descriptions, which abound in defendants' submissions, fail to provide the Court with any basis to determine whether the attorneys' work was necessary and reasonable. Accordingly, the Court will reduce defendants' hours by 30% or 425 hours. *See Hensley*, 461 U.S. at 434 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."). This reduction reflects the percentage of time entries provided without adequate descriptions.

Defendants' documentation also reveal of number of entries that describe tasks easily delegable to non-professional assistance, such as configuring defendants' computer software and investigating various news articles. Such charges cannot be part of the award. *Spegon*, 175 F.3d at 553. The Court will therefore deduct an additional 50 hours.

Adding the reductions and subtracting from the defendants' totals, the Court finds that defendants are entitled to attorney's fee for 941 hours. This represents an approximately 47% reduction in requested hours.

                b.     Hourly Rate

After determining the number of hours reasonably expended, the Court must examine whether the requested hourly rate is reasonable. *Hensley*, 461 U.S. at 433. Generally, a

10

reasonable hourly rate is to be calculated according to the prevailing "market rate" for the services rendered. *People Who Care v. Rockford Bd. of Educ., Sch. Dist.*, Number 205, 90 F.3d 1307, 1310 (7th Cir. 1996). An attorney's market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Bankston v. State of Illinois* 60 F.3d 1249, 1256 (7th Cir. 1995). The burden of proving the "market rate" is on the fee applicant, *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 518-19 (7th Cir. 1993); however once the attorney provides evidence establishing his market rate, the burden shifts to the opposing party to demonstrate why a lower rate should be awarded. *People Who Care*, 90 F.3d at 1313.

In support of its hourly rate, defendants offer the affidavit of Michael Banks of Morgan Lewis and Rex Sessions of Winston & Strawn. Mr. Banks's affidavit sets forth his standard hourly rates and states that he has handled dozens of complex employee benefits and executive compensation issues. Mr. Sessions's affidavit similarly sets forth his standard hourly rates and states that he has been a partner at Winston & Strawn since 1992, but does not indicate his expertise or relevant experience. Defendants also state that they have paid Morgan Lewis and Winston & Strawn in full for all time charges and costs submitted to them for payment. Plaintiff presents no evidence that defendants' hourly rates are not within the market rate of the Chicago area. In fact, plaintiff fails to make any argument whatsoever to challenge defendants' hourly rates. Despite this apparent concession, defendants still must bear the burden of proving the market rate for their services. *McNabola*, 10 F.3d at 518-19.

The Court initially notes that defendants' submissions regarding their hourly rates come precipitously close to being insufficient. It is well established that an attorney's self-serving

affidavit alone cannot satisfy a party's burden of establishing the market rate for that attorney's services. *Spegon*, 175 F.3d at 556. Defendants, however, also state that they paid their attorneys in full for all services rendered. A client's payment of the bills is evidence that the firm was charging a reasonable rate. *Balcor Real Estate Holding, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996) ("the best evidence of the market value of legal services is what people pay for it."); *see also Berthold Types, Ltd. v. Adobe Systems, Inc.*, 186 F. Supp.2d 834, 839 (N.D. Ill. 2002). Accordingly, the rates presented in defendants' petition are accepted as reasonable.

### c. Plaintiff's Ability to Satisfy Award

Plaintiff's final attempt to lower the fee award is based on his professed inability to satisfy any award of the magnitude that defendants' petition requests. Plaintiff claims that his current financial situation constitutes a special circumstance that would make an award unjust. *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 826 (7th Cir. 2001) (noting that an award of fees will be denied if "special circumstance make an award unjust."). To support his contention that he cannot satisfy a large award, plaintiff submits a self-serving affidavit purporting to illustrate his present insolvency. Conspicuously absent from plaintiff's submissions, however, is any extrinsic evidence to support his cries of poverty. As the Court has already found plaintiff's self-serving affidavits insufficient to substantiate his alleged destitution, *see* Jan. 24th Order at 5, it is surprising that plaintiff did not present additional evidence (such as tax returns, W-2s, or bank statements) to support his present objections. Based on plaintiff's repeated failure to adequately establish his present financial condition, the Court finds that plaintiff has not sufficiently demonstrated a special circumstance that would make an award unjust and therefore denies plaintiff's final request to reduce attorney's fees.

Based on the above described reductions and adjustments, defendants are entitled to $261,529.00 in attorney's fees.[3]

B. Non-Taxable Costs

In addition to attorney's fees, defendants also request $71,168.59 in non-taxable costs. These costs include charges for duplication of documents, computer-based legal research, telephone, facsimile, and mail charges, word processing charges, court filing fees, travel expenses (including transportation, parking, food, and lodging), and costs for an outside vendor to compile, search, and produce 50,000 e-mails. Plaintiff argues these costs are unreasonable and improper.

It should be noted that the Court has previously granted defendants' bill of costs filed pursuant to Fed. R. Civ. P. 54(d), awarding defendants $3,746.22 for costs associated with filing fees, deposition transcripts, and exemplification and copies of papers. See January 31, 2003 Order. The Court rejected defendants' request for travel expenses and fees for defendants' outside vendor that complied and produce defendants' e-mails as these costs were not specified as recoverable costs in 28 U.S.C. § 1920. It appears that defendants present fee petition once again asks to be reimbursed for the very same costs the Court dealt with in its bill of costs. For the reasons stated below, the Court denies defendants' request for non-taxable costs.

The Supreme Court has held that a court may not shift costs beyond those found in section 1920 without express statutory authorization to do so. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444-45 (1987); *West Virginia Univ. Hospitals., Inc. v. Casey*, 499 U.S. 83 (1991). Although section 1132(g)(1) of ERISA authorizes a court to shift costs, it does not

---

[3]This figure is based on a 47% reduction in defendants' hours.

13

enumerate which costs may be assessed. It states only that a court may assess "reasonable attorney's fees and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Supreme Court has stated that the word "costs" in a fee shifting statute "is to be read in harmony with the word 'costs' in 28 U.S.C. § 1920." *West Virginia Univ. Hospitals*, 499 U.S. at 87 n.3. As a result, the Seventh Circuit has held that the phrase "costs of the action" must be interpreted with reference to 28 U.S.C. § 1920. *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 411 (7th Cir. 1999) (interpreting Fair Labor Standard Act 29 U.S.C. § 216(b)'s "costs of the action" with reference to § 1920). Accordingly, the Court concludes that the phrase "cost of the action" in the ERISA fee-shifting provision, can only be read to include those costs assessable under section 1920. This interpretation accords with other circuits to address the issue. *See, e.g., Agredano v. Mutual of Omaha Companies*, 75 F.3d 541, 544 (9th Cir. 1996). Therefore, despite the Court's Jan. 24th ruling allowing non-taxable costs, the Court now holds that ERISA's fee shifting provision only allows defendants to recover for those costs permitted by section 1920.

Defendants' submissions supporting their requests for costs are woefully inadequate. First, as discussed above, it appears defendants are asking for reimbursement for many of same items the Court already dealt with in its January 31, 2003 Order. The fact that these cost appear again in defendants' present petition is testament to the little degree of effort defendants have expended to articulate a thorough and convincing summary of their expenditures. Defendants have given the Court absolutely no basis to analyze the reasonableness of their requests or the necessity of the costs for which they seek reimbursement. Despite this deficiency, the Court will briefly examine the defendants' requests.

Regarding depositions and related travel expenses, defendants have not provided any

14

evidence as to the nature of the depositions or their use in the case. Regarding the copying of documents, defendants provide no information about what was copied or how the copies were used. Further, defendants did not give the Court any information to determine the necessity of the photocopies. Consequently, defendants' requests for deposition (and related travel expenses) and copying costs are denied.

Furthermore, the Court will not allow defendants to recover expenditures for phone calls, delivery services, and postage as these expenditures are not expressly provided for section 1920. *Walh v. Carrier Mfg.*, 511 F.2d. 209, 217 (7th Cir. 1975). The Court similarly rejects defendants' request for costs for its outside vendor hired to process e-mails as this expense cannot be read into the statute. Moreover, defendants have failed to provide even basic details about the nature of the e-mails or their use in the litigation. Lastly, defendants cannot recover their expenses for computerized legal research. It is well established that costs associated with computerized legal research are not considered "costs" but rather part of the attorney's fees award. *Haroco, Inc. v. American National Bank and Trust Company of Chicago*, 38 F.3d 1429, 1440-41 (7th Cir. 1994). Therefore and for the above reasons, defendants' request for non-taxable costs in the amount of $71,168.59 is denied in its entirety.

## CONCLUSION

For the reasons stated above, the defendants' request for attorney's fees and non-taxable costs is **GRANTED** in part and **DENIED** in part. Attorney's fees are awarded in the amount of $261,529.00 and $0 is awarded in non-taxable costs.

IT IS SO ORDERED.

5/21/03

WILLIAM J. HIBBLER, DISTRICT JUDGE

15